WHITE v. CAMPBELL.

(Supreme Court, Appellate Division, Fourth Department.    March 8, 1911.)

EXECUTORS AND ADMINISTRATORS (§ 227*)—CLAIMS AGAINST.

Plaintiff's claim against decedent's estate being made on the basis of their common interest in a business, which they conducted as partners, having ceased, and deceased having agreed to account for plaintiff's interest, when a corporation was formed which took over the business and property, and issued the stock therefor to deceased, and it appearing that they continued to own the stock in common, an accounting cannot be had without a new claim being presented, or at least further evidence as to the business of the corporation being given.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 227.*]

Appeal from Judgment on Report of Referee.

Claim by James R. White against Lilla F. Campbell, as executrix of William R. Campbell, deceased. From a judgment for defendant, on the report of a referee to hear, try, and determine, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Moore & Killian, for appellant.

Dempsey, Tuttle & Rice, for respondent.

WILLIAMS, J.   The judgment should be affirmed, with costs. The controversy originated upon the presentation of a claim against an estate.   The claim was disputed, and an agreement was made to refer, upon which the order was made by the court.   There were several items in the claim, the total amounting to $22,346.38.   Payments were credited, amounting to $6,700, and the balance was $15,-646.38.   The defendant claimed, and the referee found, there was nothing due or owing the plaintiff.

The plaintiff and the testator, July 10, 1902, purchased the real estate occupied by the W. R. Campbell Planing Mill for $16,000, of which $4,000 was paid in cash, and $12,000 was represented by a mortgage, held by the Bank of Suspension Bridge.   The title was taken in testator's name, but he and plaintiff furnished each $2,000 of the cash part of the purchase price, and it was agreed they should share equally in the property.   About November 22, 1902, they commenced to operate a lumber and planing mill upon the property in the name of the W. R. Campbell Planing Mill.   They were really partners in the business.   They gave a note for $5,000 to raise money to use in the business, and secured its payment by another mortgage on the real property, to the Bank of Niagara.   They carried on the copartnership business until October 31, 1904, when a corporation known as the Citizens' Lumber Company, was organized, and took over the real property owned by the parties and the personal property of the copartnership.   The capital stock was $50,000.   All of this was issued to testator for the property turned over, except a few shares distrib-

uted for the purposes of organization. The corporation then proceeded with the business, until the death of the testator, April 9, 1907.

The plaintiff, while conceding the existence of the partnership down to the time the Citizens' Lumber Company was formed and took over the property, insisted the copartnership was then terminated, that testator no longer held any interest in the property or the stock of the corporation as trustee for him, but that he agreed at that time to account for plaintiff's interest in the property and business theretofore existing, and to pay him therefor, and it was upon this basis that his claim was made. The defendant claimed, however, and the court found, that the status and relationship of the parties as to the property and business and their interests therein remained unchanged until testator's death, that the plaintiff knew all about the changes made when the corporation was organized and took over the property, and assented thereto, and that there was no personal indebtedness by the intestate to the plaintiff at his death. There were also claims for services as architect and for money loaned, but the referee held these were not well founded. The result was a dismissal of the claims in controversy, with costs.

The questions involved were mainly of fact. The evidence was somewhat extended, and the conditions complicated. The referee seems to have arrived at correct conclusions, and we should not reverse him. Upon the finding above referred to the theory of personal indebtedness as here claimed cannot be maintained. The plaintiff will still be entitled to have an 'accounting; but it will involve, not alone the affairs of the partnership proper, but of the corporation also, and that is not possible in this action, or at least under the evidence given before the referee. While the referee in his opinion deals with and discusses the figures with reference to the partnership matters, yet nothing in the nature of an accounting was carried into the findings themselves. After making the findings above referred to, he could not go into the accounting, as I have already suggested.

If the plaintiff desires an accounting of the whole business conducted under the partnership and the corporation, he must present his claims in a different form from that litigated under this reference, or at least must give additional evidence, not given before the referee. All concur.